IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MANUFACTURERS AND TRADERS      Case No. 3:12-cv-00744-AA
TRUST COMPANY, a New York            OPINION AND ORDER
banking corporation,

        Plaintiff,

    v.

FIDELITY NATIONAL TITLE
INSURANCE COMPANY, a
California corporation,

        Defendant.

---

Sanford R. Landress
Sherri D. Martinelli
Greene & Markley, PC
1515 S.W. 5th Avenue, Suite 600
Portland, Oregon 97201
     Attorneys for plaintiff

Bennett H. Goldstein
Nancy R. Walsh
Attorneys at Law
1132 S.W. 19th Avenue, No. 106
Portland, Oregon 97205
     Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Manufacturers and Traders Trust Company moves for summary judgment pursuant to Fed. R. Civ. P. 56. In addition, plaintiff requests attorney fees and costs pursuant to Or. Rev. Stat. § 742.061. Defendant Fidelity National Title Insurance Company filed a cross-motion for summary judgment. For the reasons set forth below, plaintiff's motion is denied and defendant's motion is granted.

## BACKGROUND

This case involves a dispute over whether the litigation initiated by Gloria Carter triggered coverage under the title insurance policy ("Policy") that plaintiff held with defendant. Ms. Carter owned a residential property ("Property") in Portland, Oregon; in the beginning of April 2006, Brian Campbell, who was an agent for Michael and Dolores Rossetti ("Rossettis"), contacted Ms. Carter and offered to assist her in avoiding the pending foreclosure of the Property through a favorable refinance transaction, wherein Mr. Campbell would purchase the Property for substantially less than its appraised value and Ms. Carter would be permitted to lease the Property back with an option to purchase. Ms. Carter agreed to these terms in order to avoid foreclosure; at the closing, however, Ms. Carter noticed that there was no lease or option provision in the sale contract, the purchase price had been reduced by over $50,000, and Mr. Rossetti was listed as the buyer. Nonetheless, Ms. Carter deeded the Property to the Rossettis.

On April 26, 2006, the Rossettis borrowed $307,500 from

Page 2 - OPINION AND ORDER

plaintiff in order to refinance the Property. The loan was secured by a deed of trust ("DOT"), which lists plaintiff as the lender and Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary. In conjunction with the loan, plaintiff obtained the Policy from defendant, under which plaintiff agreed to pay a one time premium in exchange for protection from liability due to any defects in title.[1]

On April 30, 2007, Ms. Carter filed a complaint in Multnomah County Circuit Court against the Rossettis and Mr. Campbell, alleging that the sale of the Property should be rescinded due to fraud. On November 6, 2007, on behalf of plaintiff, MERS assigned its beneficial interest in the DOT to Deutsche Bank ("Deutsche"). On March 23, 2009, Ms. Carter filed a third-amended complaint, adding plaintiff and Deutsche as defendants. On March 26, 2010, Deutsche asserted a cross-claim against plaintiff for indemnification against any loss that it suffered as the result of the underlying lawsuit.

On January 5, 2010, plaintiff tendered its defense of Ms. Carter's claims to defendant; on June 23, 2010, plaintiff tendered its defense of Deutsche's cross-claim. Defendant denied plaintiff's tender as to both issues. Plaintiff ultimately settled the underlying litigation for $240,000. In defending against Mr. Carter's claims, plaintiff expended an additional $332,670.91 in

---

[1] Plaintiff initially purchased the Policy from Lawyers Title Insurance Corporation; however, in 2011, defendant acquired that company and all of its assets. See First Am. Compl. ¶ 10.

Page 3 - OPINION AND ORDER

attorney fees and costs.

On April 26, 2012, plaintiff filed the present action in this Court, alleging claims for breach of contract and breach of good faith and fair dealing, which are premised on defendant's refusal to indemnify and defend it against Ms. Carter's lawsuit.

## STANDARDS

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the

Page 4 - OPINION AND ORDER

moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

### DISCUSSION

Plaintiff argues that it qualified as an "insured" at all relevant times under the Policy, such that defendant was required to indemnify and defend against Ms. Carter's claims. In the alternative, plaintiff contends that the Policy is ambiguous and should therefore be construed against defendant. Defendant asserts that plaintiff ceased to be qualified for coverage at the time it assigned its beneficial interest in the Property to Deutsche. As such, the resolution of this case turns on the interpretation of the Policy.

I.    Preliminary Matter

To support their cross-motions for summary judgment, the parties request that this Court take judicial notice of the following documents: (1) the warranty deed, dated April 5, 2006, conveying the Property from Ms. Carter to Mr. Rossetti; (2) the transfer of the warranty deed, dated April 26, 2006, conveying the Property from Mr. Rossetti to the Rossettis as co-owners; and (3) the assignment of the DOT, dated November 6, 2007, wherein plaintiff, through its agent MERS, assigned all of its beneficial interest in the Property to Deutsche.[2]

---

[2] The Court is mindful of the fact that, in the context of non-judicial foreclosures, assignments by MERS, pursuant to its designation as "beneficiary" in the trust deed, have been held invalid. See, e.g., Niday v. GMAC Mortg., LLC, 251 Or.App. 278,

Page 5 - OPINION AND ORDER

Judicial notice may be taken at any stage in the proceedings. Fed. R. Evid. 201(d). A judicially noticed fact must be one "that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Accordingly, a "court may take judicial notice of matters of public record." Lee v. City of L.A., 250 F.3d 668, 689 (9th Cir. 2001) (citation and internal quotations omitted).

The facts contained in the documents at issue are undisputed and capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, as they are part of the public record. Therefore, the parties' requests for judicial notice are granted.

II. Policy Terms

The Policy insures against "loss or damage" incurred by the "insured" due to "[a]ny defect in" or "[u]nmarketability of the title." Goldstein Decl. Ex. 1 ("Policy"), at 1. Section 1 of the Policy, which provides "Definitions of Terms," defines "insured" as "the insured named in Schedule A. The term 'insured' also includes . . . the owner of the indebtedness secured by the insured mortgage and each successor in ownership of the indebtedness." Id. at 2. Schedule A lists plaintiff "and/or MERS" as the insured. Id. at 4.

292-99, 284 P.3d 1157 (2012). Here, however, neither party raises this issue in their briefs; thus, the parties stipulate to the fact, under the circumstances of this case, MERS' assignment on behalf of plaintiff was properly executed.

Page 6 - OPINION AND ORDER

Section 2, which is entitled "Continuation of Insurance," states that, "after conveyance of title," coverage

> shall continue in force as of the Date of the Policy in favor of an insured only so long as the insured retains an estate or interest in the land, or holds an indebtedness acquired by purchase money mortgage given by a purchaser from the insured, or only so long as the insured shall have liability by reason of covenants of warranty made by the insured in any transfer or conveyance of the estate or interest.

Id. at 2. The Policy does not, however, define the term "title."

III. Analysis

It is undisputed that the Policy, which was executed on April 26, 2006, covers any defects in title that arose prior to that date, including the claims emanating from the allegedly fraudulent sale of the Property from Ms. Carter to the Rossettis. It is also undisputed that plaintiff repeatedly tendered its defense in accordance with the procedures outlined in the Policy. Thus, this case hinges on whether the assignment of the DOT from plaintiff to Deutsche constituted a transfer of "title," such that plaintiff ceased to be insured under the Policy.

A.   Legal Standard for Insurance Policy Interpretation

The interpretation of an insurance policy is a question of law to be determined by the court. Hoffman Constr. Co. v. Fred S. James & Co. of Or., 313 Or. 464, 469-71, 836 P.2d 703 (1992). In construing the meaning of an insurance policy, "[t]he primary and governing rule is to ascertain the intention of the parties." Id. at 470 (citation and internal quotations omitted).

In so doing, the court first examines the terms and conditions of the policy; undefined terms are given their ordinary and plain

Page 7 - OPINION AND ORDER

meaning. Groshong v. Mut. of Enumclaw Ins. Co., 329 Or. 303, 307-08, 985 P.2d 1284 (1999); see also Or. Rev. Stat. § 42.250. Oregon courts refer to the dictionary when determining the ordinary and plain meaning of an undefined term in an insurance policy, except where that term has already been construed by a previous court; there, the court construes the disputed term consistent with relevant precedent. See Gonzales v. Farmers Ins. Co. of Or., 210 Or.App. 54, 60-65, 150 P.3d 20 (2006), aff'd, 345 Or. 382, 196 P.3d 1 (2008). When the term in question has a plain meaning, the court "will apply that meaning and conduct no further analysis." Groshong, 329 Or. at 308.

Where the disputed term has no plain meaning, "that is, if the term is ambiguous [because it is capable of more than one reasonable interpretation, the court] examine[s] that term within the context of the policy as a whole." Dewsnup v. Farmers Ins. Co. of Or., 349 Or. 33, 40, 239 P.3d 493 (2010) (citation omitted). If, after examining the text and context of the policy, the disputed term remains ambiguous, the court then "construe[s] the term against the drafter and in favor of the insured." Id.

## B.    Breach of Contract Claim

Plaintiff argues that it remained an "insured" under section 1 of the Policy at all relevant times and therefore was entitled to coverage. Moreover, plaintiff asserts that section 2 is not applicable to this dispute because "the word 'title' [refers] to a transfer of ownership [of] the underlying real property"; however,

Page 8 - OPINION AND ORDER

"there was no conveyance of title here . . . there was only the transfer of the indebtedness to another lender." Pl.'s Resp. to Cross-Mot. Summ. J. 3, 6.  In other words, plaintiff contends that "[p]aragraph 1(a) governs who is insured after a transfer of indebtedness," as distinguished from section 2(b), which "governs the continuation of an insured's coverage after transfer of title to the underlying real property." Id. at 4.

Conversely, defendant argues that, on November 6, 2007, when "plaintiff assigned its beneficial interest in the insured mortgage and the promissory note[, Deutsche] became the 'successor in ownership of the indebtedness,' and therefore an insured under the Policy [and] plaintiff ceased to be an insured." Def.'s Mem. in Supp. of Mot. Summ. J. 5.  Specifically, defendant argues that the assignment of the DOT constituted a transfer of title, such that section 2(b) governs.  Under section 2(b), "there are three alternative conditions precedent for an insured to continue to qualify as an insured after a conveyance," which "[p]laintiff failed to meet"; as a result, defendant concludes that it appropriately denied plaintiff's tender of coverage. Id.

Where, as here, an insurance policy does not define a critical term, the court's task is to give that term meaning within the context of the dispute.  To the extent that "title" does have a plain meaning, this Court first looks to the dictionary, wherein "title" is defined as "the instrument constituting . . . evidence" of "the fullest legal right to control and dispose of property."

<u>Webster's II New Riverside University Dictionary</u> 1213 (2d ed. 1988); <u>see also</u> <u>The Oxford English Dictionary, Volume XVIII</u> 155 (2d ed. 1989) ("title" is defined as the "[l]egal right to the possession of property (esp. real property); the evidence of such right; title-deeds"). The legal dictionary is also illustrative here and provides a similar definition of "title": "[l]egal evidence of a person's ownership rights in property; an instrument (such as a deed) that constitutes such evidence." <u>Black's Law Dictionary</u> 1622 (9th ed. 2009); <u>see also</u> <u>id.</u> at 475 (defining "deed" as "a written instrument by which land is conveyed").

The Court finds that the plain and ordinary meaning of the term in question is clear: "title" refers to the written instrument that constitutes evidence of a party's ownership interest in real property. Here, the DOT is the dispositive instrument; it evinces legal title to the Property, such that if the Rossettis defaulted, plaintiff, or its successor in interest Deutsche, would have recourse to sufficient collateral to secure repayment of the loan.[3] In other words, section 2(b) is triggered when the original insured assigns all of its beneficial interest in a deed to another party. That is precisely what occurred in this case.

---

[3] While the parties have not cited to, and the Court is not aware of, any authority that directly construes the term, cases that discuss "title" imbue it with an analogous meaning. <u>See, e.g.</u>, <u>Burke v. State ex rel. Dep't of Land Conservation & Dev.</u>, 241 Or.App. 658, 667, 251 P.3d 796 (2011).

Page 10 - OPINION AND ORDER

To interpret the Policy in any other manner would be inapposite to the plain language and would render provisions therein meaningless. First, plaintiff's interpretation is not reasonable because section 1 clearly does not govern any scenario; rather, this section merely provides definitions for the terms employed throughout the Policy. See Policy at 2. Accordingly, the only provisions of the contract that discuss continuation of coverage after a conveyance of any interest in real property are found in section 2. Id. Second, when defendant intended the Policy to refer solely to "indebtedness," it did so expressly. For example, the Policy "shall not continue in force in favor of any purchaser from the insured of . . . an indebtedness secured by a purchase money mortgage." Id. (emphasis added). Thus, because section 2 does not expressly exclude scenarios where only the underlying indebtedness is transferred, but rather applies generally to conveyances and acquisitions of real property interests, the Court can infer that the Policy was not intended to be construed as plaintiff suggests.

Under section 2(b), plaintiff was required to meet certain criteria in order to remain insured. Plaintiff, however, does not directly argue, nor does the Court find, that any of these conditions precedent were met. Plaintiff did not "retain an estate or interest in the land" because the assignment to Deutsche transferred "all beneficial interest under [the DOT]."[4] Goldstein

---

[4] While nothing in the assignment of the DOT is dispositive, the Court may nonetheless consider extrinsic evidence in

Decl. Ex. 2, at 1 (emphasis added); see also Policy at 2.   In addition, plaintiff neither held "an indebtedness acquired by purchase money mortgage" nor had "liability by reason of covenants of warranty."[5]  Policy at 2.  Therefore, defendant is correct that, when plaintiff assigned the DOT to Deutsche, it ceased to be covered under the Policy.  See, e.g., Point of Rocks, LLC v. Sun Valley Title Ins. Co., 143 Idaho 411, 413, 146 P.3d 677 (2006) (construing similar language in a title insurance policy and holding that coverage ended when the insureds conveyed the land at issue via a warranty deed).

Nevertheless, the construction of "title" is somewhat academic in this case because, even accepting plaintiff's interpretation as correct, the outcome would remain the same.  This is because the assignment of the DOT from MERS to Deutsche was not, in fact, merely a transfer of the underlying indebtedness.  Rather, the underlying indebtedness, or promissory note, exists separate and

_____

determining whether plaintiff qualifies as an "insured" under the Policy.  See Fred Shearer & Sons, Inc., v. Gemini Ins. Co., 237 Or.App. 468, 476-77, 240 P.3d 67 (2010), rev. denied, 349 Or. 602, 249 P.3d 123 (2011).

[5] To the extent that plaintiff asserts that section 2(b) was satisfied because Deutsche "cross-claimed for indemnity against M & T in the Carter case," plaintiff's argument is rejected.  Pl.'s Mem. in Supp. of Mot. Summ. J. 6; but see Pl.'s Resp. to Cross-Mot. Summ. J. 3-6 (repeatedly stating that section 2 does not apply).  The assignment of the DOT from plaintiff to Deutsche did not contain any covenants of warranty.  See Goldstein Decl. Ex. 2, at 1.  Deutsche's cross-claim also made no reference to a breach of any contractual term, but rather was one for common-law indemnity.  Compare Goldstein Decl. Ex. 12, at ¶¶ 33-35 (Deutsche's cross-claim), with Martin v. Cahill, 90 Or.App. 332, 336, 752 P.2d 857 (1988) (outlining the elements of a common law indemnity claim).

Page 12 - OPINION AND ORDER

apart from the deed or mortgage, which, as discussed above, secures repayment of that debt. <u>See, e.g.</u>, <u>James v. ReconTrust Co.</u>, 845 F.Supp.2d 1145, 1150 (D.Or. 2012) (discussing various real estate instruments and how they interact). Here, instead of transferring solely the right to repayment under the promissory note, plaintiff chose to convey its entire interest in the Property via a publicly recorded assignment of the DOT.[6]

Thus, even though defendant's drafting may be imprecise, the Policy is nonetheless capable of only one reasonable interpretation; namely, unless one of the three conditions articulated in section 2(b) was fulfilled, coverage under the Policy terminated when MERS transferred the DOT to Deutsche. Because plaintiff failed to satisfy any of these criteria, defendant properly refused to defend and indemnify, such that no breach of the parties' contract occurred. Therefore, defendant's motion is granted as to this claim and plaintiff's motion is denied.

C.    <u>Breach of Good Faith and Fair Dealing Claim</u>

Plaintiff also contends that defendant breached its implied contractual duty of good faith and fair dealing by withholding

---

[6] The Court notes, however, that the security instrument is incident to the underlying debt; accordingly, a transfer of the debt automatically transfers the trust deed. <u>See</u> <u>Schleef v. Purdy</u>, 107 Or. 71, 78, 214 P. 137 (1923); <u>James</u>, 845 F.Supp.2d at 1158 (citations omitted). Thus, plaintiff's interpretation, which entails a transfer of the debt without a transfer of the security instrument, is inconsistent with Oregon law.

coverage under the Policy. The covenant of good faith and fair dealing protects the objectively reasonable contractual expectations of the parties. <u>Uptown Heights Assocs. Ltd. v. Seafirst Corp.</u>, 320 Or. 638, 644-45, 891 P.2d 639 (1995) (citations omitted). This duty, however, "cannot contradict an express contractual term nor does it provide a remedy for an act . . . that is expressly permitted by the terms of the contract." <u>Hogan v. N.W. Trust Servs., Inc.</u>, 2010 WL 1872945, *6 (D.Or. May 7, 2010), <u>aff'd</u>, 441 Fed.Appx. 490 (9th Cir. 2011). As such, a party invoking a contractual right does not violate the duty of good faith and fair dealing. <u>Uptown Heights</u>, 320 Or. at 645.

Here, plaintiff agreed, under the explicit terms of the Policy, that it would become uninsured under section 2(b) if it transferred the deed to the Property without fulfilling one of the three conditions precedent outlined therein; defendant's invocation of this provision to refuse coverage is therefore not actionable. In other words, as discussed above, defendant had an objectively reasonable basis for denying coverage because such a denial was permitted under the plain language of the Policy. Accordingly, defendant's motion is granted and plaintiff's motion is denied as to its breach of good faith and fair dealing claim.

As a result, plaintiff's request for attorney fees and costs, pursuant to Or. Rev. Stat. § 742.061, is also denied. This statute authorizes attorney fees in insurance cases only where "the plaintiff's recovery exceeds the amount of any tender made by the

Page 14 - OPINION AND ORDER

defendant."   Or. Rev. Stat. § 742.061.   Because plaintiff did not prevail on either of its claims, nor did it recover any damages, the statute is inapplicable.[7]

## CONCLUSION

The parties' requests for judicial notice (docs. 19, 31) are GRANTED.   In addition, defendant's motion for summary judgment (doc. 27) is GRANTED, plaintiff's motion for summary judgment (doc. 17) is DENIED, and this case is DISMISSED.   Accordingly, plaintiff's request for attorney fees and costs (doc. 18) is DENIED.   Finally, defendant's request for oral argument is DENIED as unnecessary.

IT IS SO ORDERED. *November*
Dated this ___ of ~~October~~ 2012.


_____
Ann Aiken
United States District Judge

---

[7] Further, even if the elements of the statute were met, plaintiff nonetheless failed to submit a declaration regarding its attorney fees and costs.   For this additional reason, such fees will not be awarded.

Page 15 - OPINION AND ORDER